UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-21118-CIV-ALTONAGA

**ALFREDO CARMENATE**
**GUERRERO**,

    Petitioner,
v.

**KRISTI NOEM,** *et al.*,

    Respondents.[1]
_____/

## ORDER

**THIS CAUSE** came before the Court on Petitioner, Alfredo Carmenate Guerrero's Petition for Writ of Habeas Corpus [ECF No. 1], filed on February 19, 2026. Petitioner challenges his detention at the Krome North Service Processing Center ("Krome") in Miami, Florida. (*See generally id.*). Respondent filed a Response [ECF No. 5], to which Petitioner filed a Reply [ECF No. 6]. The Court has reviewed the record, the parties' filings, and applicable law. For the following reasons, the Petition is granted in part.

### I. BACKGROUND

***Petitioner's Immigration History.*** Petitioner is a 54-year-old citizen of Cuba who entered the United States near Eagle Pass, Texas on May 13, 2022. (*See* Pet. ¶¶ 14, 16; Resp. 2; *see also*

---

[1] Petitioner names several Respondents, including the U.S. Attorney General; Secretary of U.S. Department of Homeland Security; Acting Director of U.S. Immigration and Customs Enforcement; and Charles Parra, Director of U.S. Immigration and Customs Enforcement's Miami Field Office. (*See* Pet. 1). According to Respondents, the only proper Respondent is Parra, Petitioner's immediate custodian. (*See* Resp. 1 n.1 (citations omitted)); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004) (reaffirming that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent"). Petitioner does not contest that assertion. (*See generally* Dkt.). Thus, the Court refers to Parra as the only Respondent.

*id.*, Ex. 1 [ECF No. 5-1], Record of Deportable/Inadmissible Alien 1–2; *see also id.*, Ex. 3, Decl. of . . . Gunnar Pedersen "Pedersen Decl." [ECF No. 5-3] ¶¶ 5–6).[2] On May 14, 2022, Customs and Border Protection ("CBP") encountered Petitioner, determined he had no lawful status, issued a warrant for his arrest, and took him into custody. (*See* Pet. ¶¶ 16, 18–19; *see also* Pedersen Decl. ¶¶ 7–8). That same day, the Department of Homeland Security ("DHS") filed a Notice to Appear with the Executive Office for Immigration Review ("EOIR"), charging Petitioner with inadmissibility under INA section 212(a)(6)(A)(i). (*See* Resp., Ex. 5, Notice to Appear [ECF No. 5-5] 1; *see also* Pedersen Decl. ¶ 10).

Petitioner was released from detention on May 15, 2022, under an Order of Release on Recognizance ("Recognizance Order") and enrolled in an Alternative to Detention program. (*See* Pet. ¶ 20; *see generally* Resp., Ex. 4, Order of Release on Recognizance "Recognizance Order" [ECF No. 5-4]; *see also id.* 2). After his release from detention, Petitioner moved to Miami, Florida and applied for protection against persecution in court. (*See* Pet. ¶ 22). He secured employment authorization based on his pending application for Asylum Withholding of Removal and protection under the Convention Against Torture. (*See id.* ¶¶ 22, 28). Since his release, Petitioner has earned a high school diploma, obtained a technician certificate, filed taxes, and formed ties in the United States. (*See id.* ¶ 84).

On October 10, 2025, Petitioner was in Miramar, Florida for a routine Alternatives to Detention check-in with U.S. Immigration and Customs Enforcement ("ICE") when he was detained. (*See* Pet. ¶ 26; Resp. 2, *see also id.*, Ex. 7, Warrant for Arrest of Alien [ECF No. 5-7]; *see also* Pedersen Decl. ¶¶ 11–12). Petitioner asserts that between his release on May 15, 2022,

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

and his re-detention on October 10, 2025, he complied fully with all the requirements in the Recognizance Order and attended all scheduled ICE check-in appointments and court appearances. (*See* Pet. ¶¶ 23, 27, 29). DHS has never provided a reason for Petitioner's re-detention. (*See id.* ¶¶ 102–03; *see also generally* Resp.; Pedersen Decl. (both silent as to any reason for the re-detention)).

*Petitioner's Habeas Petition.* Petitioner asserts five claims for relief. In Count One of his Petition, Petitioner argues that the termination of his release without notice, opportunity to be heard, or consideration of individualized circumstances violates the Fifth Amendment's Due Process Clause. (*See* Pet. ¶¶ 80–95). In Count Two, Petitioner alleges that Respondent is violating the Due Process Clause of the Fifth Amendment's implicit guarantee of equal protection by treating him differently than other non-citizens without criminal convictions or record of violence or dangerous behavior, without a rational and legitimate governmental purpose. (*See id.* ¶¶ 96–107). In Count Three, Petitioner contends that the Government's detention scheme eliminates all meaningful opportunities for him to challenge his confinement, in violation of the Suspension Clause. (*See id.* ¶¶ 108–117). In Count IV, Petitioner asserts that his confinement violates the *Accardi* doctrine,[3] because DHS failed to follow its own binding regulations. (*See id.* ¶¶ 118–128). And in Count V, Petitioner alleges that his re-detention, in the absence of a change of circumstances warranting revocation of his release, contravenes the Administrative Procedure Act ("APA") and Immigration and Nationality Act ("INA"). (*See id.* ¶¶ 129–42).

Petitioner seeks an order granting a writ of habeas corpus and directing Respondent to immediately release him, or at a minimum, conduct an individualized custody determination

---

[3] The *Accardi* doctrine derives from *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–67 (1954), and "stands for the unremarkable proposition that an agency must abide by its own regulations." *Walker v. Att'y Gen.*, 848 F. App'x 404, 404 n.1 (11th Cir. 2021) (citing *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979)).

hearing before a neutral decisionmaker with actual authority to order release; declare that his continued detention violates the Constitution and laws of the United States; enjoin Respondent from transferring him outside this District without the Court's approval; and award him fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. section 2412. (*See id.* 31–32).

Respondent opposes Petitioner's requested relief, arguing that Petitioner's detention is lawful under 8 U.S.C. section 1225(b)(2)(A). (*See* Resp. 3–6). Remarkably, Respondent fails to address Petitioner's arguments that his due process rights were violated by the abrupt termination of the Recognizance Order without notice or an opportunity to be heard, and without any individualized circumstances; let alone Petitioner's arguments regarding the equal protection, the Suspension Clause, the *Accardi* Doctrine, and the APA. (*See generally id.*; *see also* Pet. ¶¶ 80–142).

## II.  LEGAL STANDARD

District courts have the authority to grant petitions for writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.  DISCUSSION

The Court first considers Respondent's argument that Petitioner is subject to mandatory detention under 8 U.S.C. section 1225(b)(2)(A); then addresses Petitioner's arguments that the abrupt revocation of his release on his own recognizance without notice, an opportunity to be

4

heard, or consideration of individualized circumstances, violates the Constitution and laws of the United States; and finally turns to Petitioner's request for attorney's fees and costs under the EAJA.

### A. Respondent's Statutory Argument

Respondent argues that Petitioner is lawfully detained under 8 U.S.C. section 1225(a)(1) and subject to mandatory detention under section 1225(b)(2)(A) because he is an "applicant for admission." (Resp. 3–6). The critical distinction between sections 1225(b)(2) and 1226(a) is that "noncitizens detained under [section] 1226(a) are entitled to individualized bond hearings[,]" *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (alterations added; citations omitted), whereas those detained under section 1225(b)(2) are not, *see id.* at 297; *see also, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citation omitted); *Patel v. Hardin*, No. 25-cv-870, 2025 WL 3442706, at *2 (M.D. Fla. Dec. 1, 2025).

As Respondent recognizes, courts within this District and the undersigned have rejected the arguments Respondent makes here. (*See* Resp. 2–3 (listing cases)). Respondent does not persuade that the Court's prior conclusion was in error or that the facts of this case merit a different outcome; instead, Respondent submits an abbreviated brief incorporating arguments made in *Puga* "to preserve the legal issues, to conserve judicial and party resources, and to expedite the Court's consideration of this matter." (*Id.* 1–2). Consequently, as in *Puga*, the Court concludes that section 1226(a) — not section 1225(b) — governs Petitioner's detention. *See Puga*, 2025 WL 2938396, at *4–5.

Petitioner's release in May 2022 on his own recognizance and enrollment in an Alternatives to Detention program only bolster that conclusion. (*See* Recognizance Order 1 ("In accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. section 1226] . . . , you are being released on your own recognizance[.] (alterations added))); *see also Ortega-Cervantes v.*

*Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("[T]he [Immigration and Naturalization Service] used the phrase 'release on recognizance' as another name for 'conditional parole' under [section] 1226(a)." (alterations added); *see also* Pederson Decl. ¶ 9 ("Petitioner was issued an order of release on recognizance . . . and enrolled in an Alternative to Detention (ATD) program." (alteration added))).

Respondent cites the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026), to support its statutory interpretation. (*See* Resp. 3–4). Even if the Court was to agree with Respondent and adopt the Fifth Circuit's reasoning, as Petitioner makes clear, his Petition arises not from the statutory provision governing his detention, but from the abrupt revocation of his release. (*See* Pet. ¶ 68 ("The panel focused solely on statutory interpretation, did not consider due process challenges to prolonged or indefinite mandatory detention without any individualized hearing, nor did it address claims under the [APA], the equal protection component of the Fifth Amendment, the Suspension Clause, or the *Accardi* doctrine." (alteration added))).

The Court therefore next addresses Petitioner's Fifth Amendment claim.

**B. Petitioner's Fifth Amendment Claim**

Petitioner argues that his Fifth Amendment right to due process was violated when his release on his own recognizance was suddenly revoked without prior notice or an opportunity to be heard, and in the absence of any individualized change in circumstances justifying such revocation. (*See generally* Pet.). As mentioned, Respondent does not address Petitioner's Fifth Amendment argument. (*See generally* Resp.); *United States v. Evans*, 292 F. App'x 761, 762 (11th Cir. 2008) ("When a party fails to provide arguments on the merits of an issue, and makes only

passing reference to it in the initial brief, the argument is deemed waived and we need not address it." (citation omitted)).

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V (alterations added). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *see also, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment . . . protects every one of these persons . . . . Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection. (alterations added; citations omitted)); *Zadvydas*, 533 U.S. at 693 ("[T]he [Fifth Amendment's] Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (alterations added; citations omitted)). *But see generally Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) (holding that an alien who was apprehended 25 yards from the southern border after just having crossed it unlawfully was not entitled to due process protections).

Courts have held that aliens released on their own recognizance are entitled to due process protections under the Fifth Amendment before their recognizance may be revoked and they are re-detained. *See generally, e.g.*, *Khabazha v. U.S. Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514 (S.D.N.Y. Nov. 25, 2025); *Cardenas v. Almodovar*, No. 25-cv-9169, 2025 WL 3215573 (S.D.N.Y. Nov. 18, 2025); *Tumba v. Francis*, No. 25-cv-8110, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025); *Sanchez v. LaRose*, No. 25-cv-3136, 2025 WL 3470432 (S.D. Cal. Dec. 3, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. July 24, 2025); *Ortega v. Noem*, No. 25-

cv-01663, 2025 WL 3511914 (E.D. Cal. Dec. 8, 2025). *But see generally S.D.B.B. v. Johnson*, No. 25-cv-01592, 2025 WL 2962669 (M.D.N.C. Oct. 17, 2025).

To evaluate whether the procedures used to deprive Petitioner's liberty interest are constitutionally adequate, the Court must apply the three-factor balancing test established by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Parsons v. Coffin*, No. 25-11592, 2026 WL 17010, at *3 (11th Cir. Jan. 2, 2026) (alterations added); *see also Merino v. Ripa*, No. 25-23845-Civ, 2025 WL 2941609, at *4 (S.D. Fla. Oct. 15, 2025) (applying the *Mathews* test in the context of a due process challenge to immigration detention). Under *Mathews*, the Court must weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (citation omitted).

### i. Petitioner's Private Interest

"[I]ndividuals released from ICE custody on parole have a protected interest in remaining out of custody." *Ortega*, 2025 WL 3511914, at *3 (alteration added; citing *Pinchi*, 792 F. Supp. 3d at 1032–33); *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) ("[A] deportation proceeding implicates an alien's liberty interest, which is protected by the Due Process Clause." (alteration added; citations omitted)).

The INA authorizes the federal government to arrest and detain noncitizens "pending a decision on whether they are to be removed." *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021); *see also Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Yet "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual

8

may rely, that their liberty 'will be revoked only if they fail to live up to the conditions of release.'" *Pinchi*, 792 F. Supp. 3d at 1032 (alterations adopted; quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody []he has a protected liberty interest in remaining out of custody." *Id.* (alteration added); *see also Khabazha*, 2025 WL 3281514, at *5 ("[C]ourts have held that the first *Mathews* factor cuts in favor of petitioners who were released from ICE detention subject to conditions and the threat of re-detention." (alteration added; citations omitted)).

Applying these principles, the Court concludes that the first *Mathews* factor heavily favors Petitioner. In the almost four years since Petitioner has been released, he has not been arrested nor charged for any criminal offenses, he has fully complied with all conditions of release, and he has attended routine ICE check-in appointments. (*See* Pet. ¶¶ 23–24, 27–29); *see also Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("[W]ith the passage of time, a protectable liberty interest can 'crystallize[]' . . . where the individual 'reasonably thought the release was deliberate and lawful.'" (alterations added and adopted; citation omitted)).

Additionally, Petitioner has resided in the United States since 2022; obtained valid work authorization; obtained a high school diploma; obtained a technician certificate; filed his taxes; and formed multiple ties to the United States. (*See* Pet. ¶¶ 25, 28, 84); *see also Thuraissigiam*, 591 U.S. at 107 ("[A]liens who have established connections in this country have due process rights in deportation proceedings[.]" (alterations added)). Consequently, Petitioner's private interest in restoring the prior conditions of his release, and in retaining his liberty, is significant. *See Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) ("[L]iberty from bodily restraint has always

been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." (alteration added; citation omitted)).

### ii. The Risk of Erroneous Deprivation

The second *Mathews* factor focuses on the risk of erroneous deprivation as to the person facing the deprivation of liberty — Petitioner. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004) (citation omitted).

Immigration detention is civil rather than criminal in nature, *see United States v. Drummond*, 240 F.3d 1333, 1335 n.3 (11th Cir. 2001) (citation omitted); *see also Zadvydas*, 533 U.S. at 690, and therefore "is by definition non-punitive[,]" *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (alteration added). "The Supreme Court has found that detention pending removal has two basic purposes: preventing flight before removal and avoiding danger to the community." *Young v. Aviles*, 99 F. Supp. 3d 443, 452 (S.D.N.Y. 2015) (citing *Zadvydas*, 533 U.S. at 690–91); *see also Gonzalez Carmona v. Ripa*, No. 25-cv-1128, 2025 WL 3649577, at *5 (M.D. Fla. Dec. 17, 2025) (citation omitted).

Petitioner's release on his own recognizance on May 15, 2022, and enrollment in an Alternative to Detention program reflected ICE's determination that he neither posed a flight risk nor a danger to the community. (*See* Pet. ¶ 20; *see generally* Recognizance Order); *see* 8 C.F.R. § 1236.1(c)(8); *see also Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 938 (N.D. Cal. 2025); *Khabazha*, 2025 WL 3281514, at *6. Respondent provides no evidence that in the intervening years before Petitioner's re-detention on October 10, 2025, Petitioner became a flight risk or a danger to the community. (*See generally* Resp.). And Respondent fails to articulate any justification for revoking Petitioner's release on his own recognizance and re-detaining him. (*See generally id.*). Therefore, while the Government may have been entitled to presume Petitioner

posed a flight risk or danger when he was initially detained in May 2022, "it is no longer entitled to that presumption" after Petitioner "has been openly living in the United States for [almost four] years," and where the record does not reflect any change in Petitioner's circumstances. *Aviles-Mena v. Kaiser*, No. 25-cv-06783, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025) (alteration added); *see also Khabazha*, 2025 WL 3281514, at *6 ("When the government seeks to curtail a person's liberty, '[t]he law requires a change in relevant *facts*, not just a change in attitude.'" (alteration in original; emphasis in original; quoting *Valdez v. Joyce*, No. 25-Civ-4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025))).

Additionally, "[t]he Fifth Amendment's Due Process Clause generally requires 'notice and the opportunity to be heard incident to the deprivation of . . . liberty[.]" *Busacca v. S.E.C.*, 449 F. App'x 886, 890 (11th Cir. 2011) (alterations added; quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Petitioner alleges — and Respondent does not contest — that in October 2025, Petitioner was abruptly re-detained; his release on his own recognizance was revoked; and "DHS has not conducted any neutral, individualized assessments of Petitioner's danger to the community, risk of flight, or suitability for less restrictive alternatives to detention." (Pet. 3; *see also generally* Resp.). These actions, without ICE providing Petitioner any notice, hearing, opportunity to be heard, or making a finding of changed circumstances sufficient to justify re-detention and the revocation of the Recognizance Order, present a significant risk of erroneous deprivation. *See Mathews*, 424 U.S. at 348 ("The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." (citation and quotation marks omitted)); *see also Valdez*, 2025 WL 1707737, at *4 ("Petitioner's re-detention without any change in circumstances or procedures establishes a high

11

risk of erroneous deprivation of his protected liberty interest." (quotation marks and citation omitted)).

### iii. The Government's Interest

The third *Mathews* factor also weighs in Petitioner's favor. "[T]he government's interest in re-detaining Petitioner[] without a pre-detention hearing is low because ICE previously made the determination to release [him], and there is no evidence in the record of any changed circumstances that might cause ICE to reconsider its parole determination." *Valencia Zapata*, 801 F. Supp. 3d at 938 (alterations added; citation and quotation marks omitted); *A.N.P.S. v. Salazar*, No. 25-cv-14778, 2025 WL 3707333, at *5 (N.D. Ill. Dec. 22, 2025) ("[O]nce the government has released a detainee upon a finding that he is not a danger to himself or his community and does not present a flight risk, due process prevents the government from subsequently changing its mind on a whim and re-arresting the detainee." (alteration added)); *see also P.T. v. Hermosillo*, No. 25-cv-2249, 2025 WL 3294988, at *4 (W.D. Wash. Nov. 26, 2025) (collecting cases).

Between his release in May 2022 and his re-detention in October 2025, Petitioner has not been arrested nor charged for any criminal offenses; he has complied with all conditions of release, attended routine ICE check-in appointments and court appearances, applied for and received work authorization, earned a high school diploma and a technician certificate, and developed community ties. (*See* Pet. ¶¶ 23–24, 27–29). Respondent has therefore "failed to show a significant interest in Petitioner's continued detention." *Valdez*, 2025 WL 1707737, at *4.

In sum, all three *Mathews* factors favor Petitioner. The sudden re-detention of Petitioner, and the revocation of his release on his own recognizance, violated Petitioner's Fifth Amendment due process rights. Petitioner has therefore established that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

### iv. Relief

"The typical remedy for [unlawful] detention is, of course, release." *Munaf*, 553 U.S. at 693 (alteration added; citation omitted); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody." (alteration added)). It follows that Petitioner is entitled to immediate release from unlawful detention and to the immediate restoration of the conditions of the Recognizance Order that were in effect prior to his re-detention on September 3, 2025. *See Khabazha*, 2025 WL 3281514, at *8. Petitioner's release "will be 'without prejudice' to the remedies that Respondent[] may otherwise have, namely . . . deport[ing] Petitioner . . . in the future." *Nguyen v. Noem*, No. 25-cv-3032, 2025 WL 3564211, at *3 (S.D. Cal. Dec. 12, 2025) (alterations added; citation omitted).[4]

### C. Attorney's Fees

In his general prayer for relief, Petitioner seeks attorney's fees and costs under the EAJA. (*See* Pet. 32). Under the EAJA, "[a] party that prevails against the United States in a civil action is entitled, in certain circumstances, to an award of attorney's fees, court costs, and other expenses." *Melkonyan v. Sullivan*, 501 U.S. 89, 91 (1991) (alteration added; citing 28 U.S.C. § 2412). The statute extends to prevailing parties in civil actions against "any agency or any official of the United States acting in his or her official capacity[.]" 28 U.S.C. § 2412(a) (alteration added). Habeas corpus petitions are civil actions. *See, e.g.*, *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) ("Our decisions have consistently recognized that habeas corpus proceedings are civil in nature." (citation omitted)); *see also Ex parte Tom Tong*, 108 U.S. 556, 559 (1883) ("The writ

---

[4] The Court declines to reach the merits of Counts Two, Three, Four, and Five, as its resolution of Count One renders consideration of these counts unnecessary. *See S. Fla. Water Mgmt. Dist. v. Fed. Emergency Mgmt. Agency*, No. 13-80533-Civ, 2014 WL 4805856, at *11 (S.D. Fla. Sept. 18, 2024) ("The Court need not address Counts II and III because resolving Count I in [Petitioner]'s favor provides [Petitioner] the relief [he] is requesting." (alterations added)).

of *habeas corpus* is the remedy which the law gives for the enforcement of the civil right of personal liberty. . . . Proceedings to enforce civil rights are civil proceedings[.]" (alterations added; italics in original)).

To be eligible for fees under the EAJA, "the prevailing party must submit to the court an application for fees and expenses 'within thirty days of final judgment in the action.'" *Melkonyan*, 501 U.S. at 91 (quoting 28 U.S.C. § 2412(d)(1)(B)). As the Court rules in Petitioner's favor, Petitioner may apply within 30 days of final judgment showing he is a prevailing party, the amount sought, and that the position of the United States was not substantially justified. *See Fla. Wildlife Fed'n v. U.S. Army Corps of Eng'gs*, No. 05-80339-Civ, 2006 WL 8430907, at *1 (S.D. Fla. May 5, 2006) (citing 28 U.S.C. § 2412(d)(1)(B)); *see also De La Caridad Brito v. Saul*, No. 19-cv-22911, 2020 WL 7248247, at *1 (S.D. Fla. Nov. 9, 2020) ("An EAJA request is timely if made within 30 days of the final judgment, which, if no appeal is taken, is 90 days from the judgment's entry." (citation omitted)). The Court will terminate such motion should an appeal not have been filed or if an appeal is pending, and reinstate it, if appropriate, after resolution of the appeal.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner, Alfredo Carmenate Guerrero's Petition for Writ of Habeas Corpus [ECF No. 1] is **GRANTED in part**. Respondent is ordered to immediately release Petitioner from custody subject to the conditions of his pre-existing Order of Release on Recognizance. (*See* Resp., Ex. 4, Order of Release on Recognizance [ECF No. 5-4]). Prior to any re-detention of Petitioner, Petitioner is entitled to notice of the reasons for revocation of release on his own recognizance and a hearing before a neutral decision-maker to determine whether re-detention is warranted.

2. **Counts II**, **III, IV, and V** of the Petition for Writ of Habeas Corpus [ECF No. 1] are **DISMISSED without prejudice**.

**DONE AND ORDERED** in Miami, Florida, this 27th day of February, 2026.

*[signature]*
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record